IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                     No. MJ 11-2730 JB

HEATHER ATOLE,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Notice of Appeal of Detention Order, filed November 30, 2011 (Doc. 13)("Notice of Appeal").  The Court held a detention hearing on December 14, 2011.  The primary issues are: (i) whether Plaintiff United States of America has proven by a preponderance of the evidence that Defendant Heather Atole is a flight risk; and (ii) whether the United States has proven by clear-and-convincing evidence that Atole is a danger to the community, and that no condition or combination of conditions would reduce that danger to an acceptable level.  Because the United States has conceded that Atole is not a flight risk and the Court does not believe the evidence supports a finding that she is a flight risk, the Court concludes that she is not a flight risk.  While Atole is a danger to the alleged victim and to the public, in part because of drinking to excess, the Court believes that, once the Court has imposed certain conditions beyond those that the United States Probation Office ("USPO") recommended, it can release Atole to a halfway house without her posing a danger to the community.

**FACTUAL BACKGROUND**

The United States' allegations in this case are largely, at this stage, undisputed.  Atole, a Mescalero Apache, assaulted Lisa Trujillo, an enrolled member of the Navajo Nation, with a deadly

weapon, resulting in serious bodily injury.  See Criminal Complaint at 1, filed November 12, 2011 (Doc. 1)("Complaint").  Atole stabbed L. Trujillo with a knife.  See Complaint at 1.  Atole stabbed L. Trujillo on her upper torso, shoulder, and back.  See Complaint at 1.  L. Trujillo's stab wounds resulted in a collapsed lung and pnuemothorax,[1] which required several surgeries to repair.  See Complaint at 1.  The assault occurred "[w]ithin the exterior boundaries of the Mescalero Apache Indian Reservation, the territorial jurisdiction of the United States."  Complaint at 1.  The assault occurred at "the home of Fritz and Wilson Burgess, located at 25102 U.S. Highway 70, Mescalero, New Mexico."  Affidavit of Daniel J. Sarkozy ¶ 3, at 2-3 (executed November 21, 2011), filed November 21, 2011 (Doc. 1)("Sarkozy Aff.").  When officers arrived at this residence, they saw L. Trujillo "bleeding from multiple stab wounds to her upper torso, shoulder and back."  Sarkozy Aff. ¶ 3, at 3.  The officers identified Sherman Trujillo, Marcy Pena, and Fritz Burgess as possible witnesses to the incident.  See Sarkozy Aff. ¶ 4, at 3.  All of the witnesses at the scene identified Atole as the person who stabbed L. Trujillo.  See Sarkozy Aff. ¶ 4, at 3.

Burgess heard commotion in the hallway near his back bedrooms and bathroom in his home. See Sarkozy Aff. ¶ 6, at 4.  He saw Atole and L. Trujillo wrestling in the hallway when he went to investigate.  See Sarkozy Aff. ¶ 6, at 4.  Burgess, S. Trujillo, and Pena then separated L. Trujillo and Atole.  See Sarkozy Aff. ¶ 6, at 4.  Afterwards, they observed L. Trujillo bleeding profusely from her shoulder.  See Sarkozy Aff. ¶ 6, at 4.  S. Trujillo stated that various people had been partying

---

[1]Pneumothorax is "[t]he presence of free air or gas in the pleural cavity."  Stedman's Medical Dictionary 1526 (28th ed. 2006).  The pleural cavity is "the potential space between the parietal and visceral layers of the pleura."  Stedman's Medical Dictionary, supra, at 330.  Parietal means "[r]elating to the wall of any cavity."  Stedman's Medical Dictionary, supra, at 1425.  Visceral relates to the body's internal organs.  See Stedman's Medical Dictionary, supra, at 2135-36.  Pleura refers to one of the membranes enveloping the lungs and lining the cavity that contains the lungs. See Stedman's Medical Dictionary, supra, at 1512.

at this residence the night of the incident, June 27, 2011.  See Sarkozy Aff. ¶ 7, at 4-5.  S. Trujillo thought that Atole was flirting with Wilson Kanseah, a man at the party, shortly before the altercation occurred.  See Sarkozy Aff. ¶ 7, at 5.  Atole also cut Pena's arm after she stabbed L. Trujillo, causing minor wounds.  See Sarkozy Aff. ¶ 7, at 6.  The knife was "an eight (8") inch kitchen Chef's knife with a black handle."  Sarkozy Aff. ¶ 7, at 6.  L. Trujillo also recalls the incident and recalls Atole stabbing her.  See Sarkozy Aff. ¶ 8, at 6-7.  L. Trujillo stated that she, Kanseah, and Pena were planning on leaving the residence, and driving to Pena's home.  See Sarkozy Aff. ¶ 8, at 6.  L. Trujillo stated that she believed Atole attacked her because Atole was jealous of her and Pena spending time with Kanseah at the party.  See Sarkozy Aff. ¶ 8, at 7.  While Atole was in custody, she, after waiving her rights under Miranda v. Arizona,[2] admitted to stabbing L. Trujillo because she was "angry and jealous after seeing Trujillo kissing her boyfriend (Wilson Kanseah) earlier that evening."  Sarkozy Aff. ¶ 11, at 8.

## PROCEDURAL BACKGROUND

On November 21, 2011, the United States filed a Complaint charging Atole with three Counts: (i) Count 1 - assault with a deadly weapon in violation of 18 U.S.C. § 113(a)(3); (ii) Count 2 - assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6); and (iii) Count 3 - felony within Indian County in violation of 18 U.S.C. § 1153(a).  See Complaint at 1.  On November 29, 2011, the USPO issued its recommendation regarding Atole's detention.  See Pretrial Services

---

[2]Miranda v. Arizona, 384 U.S. 436, 478-79 (1966)(holding that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized," and stating that "[p]rocedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored," law enforcement officers must warn the individual that he has the right to remain silent, that he has the right to the presence of an attorney, and  that, if he cannot afford an attorney, one will be appointed for him).

Report ("Report").  The USPO notes that Atole has lived at her current address since 1998.  See Report at 1.  The USPO states that Atole does not have a passport and has never traveled outside the United States.  See Report at 1.  The USPO indicates that Atole has a ninth-grade education.  See Report at 1.  The USPO states that Atole's mother resides in Mescalero, and that her father passed away on May 20, 2010 from alcohol poisoning.  See Report at 2.  The USPO notes that Atole has six siblings, most of whom live in Mescalero.  See Report at 2.  The USPO states that Atole reported that she has frequent contact with her family.  See Report at 2.  The USPO asserts that Atole has five children, but has never been married.  See Report at 2.  Regarding Atole's employment history, the USPO states that Atole has been unemployed since 2007.  See Report at 2.  The USPO indicates that Atole receives a monthly stipend of $600.00 from the Jicarilla Apache Tribe in Dulce, New Mexico.  See Report at 2.  The USPO notes that Atole resides with her mother.  See Report at 2.  The USPO states that Atole declined to discuss any substance abuse history.  See Report at 3.  The USPO notes that Atole's mother stated that Atole consumes alcohol, but was unaware of the specifics regarding her alcohol consumption.  See Report at 3.  The USPO reports that the prior criminal conduct in which Atole has engaged include charges regarding "Disorderly Conduct - Offensive Gesture (misdemeanor)" and "Making False Report (misdemeanor)," both of which occurred in Pagosa Springs, Colorado.  Report at 3.  The USPO recommends a variety of conditions for her release to reasonably assure her appearance and to protect the community, including having her reside in a halfway house.  See Report at 4.

On November 30, 2011, the Honorable William P. Lynch, United States Magistrate Judge, conducted a detention hearing.  See Criminal Clerk's Minutes at Las Cruces at 1, filed November 30, 2011 (Doc. 10)("Minutes").  On November 30, 2011, Judge Lynch concluded that he should issue a detention order pending trial on the basis that: (i) there is a serious risk that Atole will not

appear; and (ii) there is a serious risk that Atole will endanger the safety of another person or the community.  See Detention Order Pending Trial at 1-2, filed November 30, 2011 (Doc. 11)("Order").  On November 30, 2011, Atole filed her Notice of Appeal.  See Doc. 13.  On November 30, 2011, Judge Lynch issued an Amended Detention Order Pending Trial concluding that he should detain Atole on the basis that there is a serious risk that Atole will endanger the safety of another person or the community.  See Doc. 14 ("Amended Order").  The Amended Order does not conclude that Atole poses a flight risk.  See Amended Order at 1-2.[3]  On December 9, 2011, the USPO issued a Memorandum stating that, after considering Judge Lynch's decision to detain Atole, it still stood by its original recommendation to release Atole to a halfway house.  See Memorandum at 1.

On December 13, 2011, the United States filed its United States' Response in Opposition to Defendant's Appeal of Pretrial Detention Order.  See Doc. 18 ("Response").  The United States recounts that Atole faces charges of assault with a deadly weapon and assault resulting in serious bodily injury, both occurring within Indian County, in violation of 18 U.S.C. §§ 113(a)(3), 113(a)(6), and 1153(a).  See Response at 1.  The United States notes that these charges "stem from an incident in which Defendant allegedly stabbed the victim, Lisa Trujillo, four times with a kitchen knife."  Response at 1.  The United States contends that the factors in 18 U.S.C. § 3142(g) weigh in favor of detaining Atole.  See Response at 2.  The United States asserts that the crimes at issue

---

[3]The Minutes from the detention hearing Judge Lynch conducted indicate the he concluded that Atole poses a danger to the safety of the victim and the community, but not that she is a flight risk.  See Minutes at 1.  It is not entirely clear whether Judge Lynch originally concluded that Atole is a flight risk but then changed his conclusion, or whether there was an accidental finding that she is a flight risk in his Order.  The Amended Order does, however, clarify that Judge Lynch ultimately concluded that she should be detained only on the basis that she poses a danger to the safety of the victim and the community.

are crimes of violence, which makes these crimes more dangerous than other crimes for purposes of determining risk to the community. See Response at 3. The United States also contends that "the circumstances of the offense are troubling because Defendant attacked and stabbed an unarmed woman without warning based on an apparent romantic rivalry." Response at 3. The United States argues that the "evidence against Defendant is strong." Response at 3. It recounts that two witnesses observed Atole attacking L. Trujillo, and another witness saw her holding a knife. See Response at 3. The United States asserts that "Ms. Trujillo clearly recalls the attack." Response at 3. The United States argues the "[m]edical records indicate Ms. Trujillo was stabbed four times and suffered respiratory failure." Response at 3. The United States also contends that "Defendant herself admitted that she stabbed Ms. Trujillo." Response at 3.

At the detention hearing that the Court conducted on December 14, 2011, Atole admitted that she was intoxicated on the night the incident occurred. See Transcript of Hearing at 3:21-23 (taken December 14, 2011)(Mandel)("Tr.").[4] Atole emphasized that the USPO has recommended release to a halfway house where Atole would not have any temptation to drink. See Tr. at 4:1-3 (Mandel). Atole contended that, because L. Trujillo is no longer on the reservation but in Navajo, New Mexico so that she can attend school, there is little likelihood that Atole will come in contact with the alleged victim. See Tr. at 4:4-10 (Mandel). Atole asserted that, if she stays in a halfway house, there is a low likelihood that she will injure others, as she will have access to substance-abuse counseling, she can start to obtain her GED, and she can have an evaluation to determine what her needs are. See Tr. at 4:11-20 (Mandel). Atole contended that the United States has the obligation to prove that there is no condition or combination of conditions that will reasonably assure her

---

[4]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

appearance and the safety of persons in the community.  See Tr. at 4:21-5:5 (Mandel).  Atole contended that her personal background does not support a finding by clear-and-convincing evidence that she poses a risk to others in the community.  See Tr. at 5:6-9 (Mandel).  The Court inquired what occurred in the proceedings with Judge Lynch regarding the issue of flight risk. See Tr. at 5:12-14 (Court).  Atole noted that Judge Lynch had checked the respective box regarding flight risk, but that she was not entirely sure what Judge Lynch's intentions were.  See Tr. at 5:15-19 (Mandel).  Atole stated that she has been sober for several months and is ready to face these charges. See Tr. at 6:1-4 (Mandel).  The Court inquired what the benefit to Atole would be of staying in a halfway house, given that the halfway house is distant from her home and children.  See Tr. at 6:5-9 (Court).  Atole noted that her family will be able to visit her more easily at a halfway house in Las Cruces, New Mexico than in the Otero County Detention Center and that she will have better contact with her children.  See Tr. at 6:10-13 (Mandel).  The Court inquired whether Atole knew the alleged victim before the incident occurred.  See Tr. at 7:24-8:2 (Court).  The United States noted that it did not have any information regarding their prior relationship, but that it would be willing to provide the Court with more detailed information on this issue.  See Tr. at 8:3-8 (Davenport).

      The United States then recounted the allegations in the case.  See Tr. at 8:10-10:14 (Davenport).  The United States contended that these crimes constitute crimes of violence for detention purposes. See Tr. at 10:22-11:7 (Davenport).  The United States also contended that Atole has a long-term unemployment problem and lacks stability in her life.  See Tr. at 11:8-16 (Davenport).  The United States acknowledged that, if Atole is released to the halfway house that the USPO has recommended, she will not be in proximity to the victim.  See Tr. at 12:6-10 (Davenport).  The United States noted that there is no evidence regarding Atole's impulse control while she is sober.  See Tr. at 12:16-25 (Davenport).  The Court inquired whether there was any

additional information about the disorderly conduct charge Atole had received in Pagosa Springs, Colorado.  See Tr. at 13:1-2 (Court).  The United States asserted that it had no further information regarding that incident.  See Tr. at 13:3-10 (Davenport, Court).  The Court noted that it has had successful experiences in the past with members of Native American tribes in Northern New Mexico, other than the Southern Apache tribe of which Atole is a member, in placing defendants in halfway houses and keeping them away from alcohol.  See Tr. at 13:11-15 (Court).  The Court inquired whether the United States had any objection to placing similar conditions on Atole and releasing her to a halfway house.  See Tr. at 13:15-23 (Court).  The United States argued that it believes Atole poses a danger to the community.  See Tr. at 13:24-14:7 (Davenport).  The United States conceded that Atole does not pose a flight risk.  See Tr. at 14:11-13 (Davenport).  The United States expressed its concern that Atole does not have much impulse control and that she may engage in similar conduct if the Court releases her, either with the victim or with other persons.  See Tr. at 14:19-15:10 (Davenport).  The United States asserted that it is not sure if preventing her from drinking alcohol would mitigate some of these concerns.  See Tr. at 14-24 (Davenport).  The United States noted that it was opposed to Atole's release, but that, if she were to be released, it would request similar conditions to those the Court imposed in a factually similar case, United States v. Cachucha, 778 F.Supp.2d 1172 (D.N.M. 2011).  See Tr. at 17:7-23 (Davenport).

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86

(5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo). "[I]t is within the district court's authority to review a magistrate's release or detention order sua sponte." United States v. Cisneros, 328 F.3d at 616 (citing United States v. Spilotro, 786 F.2d 808, 815 (8th Cir.1986)).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616. To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

(g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --

   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including--

      (A) the person's character, physical and mental condition, family

-9-

>> ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## **ANALYSIS**

Atole requests that the Court release her to a halfway house before trial. The United States asks that the Court affirm Judge Lynch's Amended Order in which he detained Atole based on a conclusion that she poses a risk to the community and others. Because the United States has conceded that Atole is not a flight risk and no other evidence suggest she is a flight risk, the Court concludes that Atole is not a flight risk. Additionally, while the Court finds that the United States has proved by clear-and-convincing evidence that Atole is a danger to the community and to others, the Court believes that the conditions the USPO has proposed and some additional conditions sufficiently mitigate the risk to the community and justify releasing Atole to a halfway house. Consequently, the Court will not detain Atole pending further proceedings.

**I.     ATOLE DOES NOT PRESENT A FLIGHT RISK.**

Atole's history shows no indication that she would be to be a flight risk.  The United States conceded at the hearing that Atole does not pose a flight risk.  See Tr. at 14:11-13 (Davenport).  The Report provided by the USPO disclosed that Atole has lived at her current residence since 1998.  The Report indicated that she has no passport and has never left the United States.  Notably, Judge Lynch amended his original Order and filed an Amended Order, omitting from the Amended Order his conclusion that Atole posed a risk of flight.  See Amended Order at 2.  In its Response, the United States does not argue that she poses a flight risk.  See Response at 1-3.  While it is true that Atole remains unemployed, she has five children and various other family members here in New Mexico.  The record before the Court does not indicate that Atole is a flight risk.  Furthermore, the United States has not argued, and the Court does not conclude that the crimes with which Atole has been charged are ones which Congress intended for there to be a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person, and secure the safety of the community as defined by 18 U.S.C. § 3142(e).  See 18 U.S.C. § 3142(e); United States v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)(unpublished)(recognizing that the existence of probable cause that the defendant has committed certain enumerated crimes creates a rebuttable presumption of detention).  Atole faces charges under 18 U.S.C. §§ 113(a)(3), (a)(6), and 1153(a), none of which are enumerated in 18 U.S.C. § 3142(e).  The Court therefore finds that the United States has not shown by a preponderance of the evidence that Atole is a flight risk.  This conclusion is also based, in part, on some restrictions the Court will impose on Atole's release, including locking her down at a halfway house without a vehicle and requiring her to wear a global positioning satellite ("GPS") tracking device.  Those conditions will significantly reduce any risk of flight.

## II.    THE UNITED STATES HAS SHOWN BY CLEAR-AND-CONVINCING EVIDENCE THAT ATOLE IS A DANGER TO THE COMMUNITY, BUT THE COURT BELIEVES IT CAN MITIGATE THAT RISK TO ACCEPTABLE LEVELS.

The United States asserts that the nature and circumstances of the offense charged, and the weight of the evidence in the case support Atole's detention.  The United States does not raise any arguments regarding the nature and history of Atole's past conduct.  See Response at 2-3.  The United States contends that placing Atole in a halfway house and imposing conditions on her release will not adequately safeguard the community.

First, the Court recognizes that the charges Atole faces involve crimes of violence, which makes the first factor weight heavily in favor of detention.  18 U.S.C. § 3156(a)(4) defines a crime of violence as:

>   (A)    an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
>   (B)    any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
>
>   (C)    any felony under chapter 109A, 110, or 117

18 U.S.C. § 3156(a)(4).  Count 1 charges Atole with the crime of assault with a deadly weapon in violation of 18 U.S.C. § 113(a)(3).  18 U.S.C. § 113(a)(3) makes it a crime to commit "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse."  The element regarding intent to do bodily harm makes that element include the use of physical force against a person within the definition of 18 U.S.C. § 3156(a)(4)(A).  See United States v. Bruce, 458 F.3d 1157, 1164 n. 4 (10th Cir. 2006)(explaining that assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) includes as an element "the intent to commit bodily harm"); United States v. Scott, No. 10-1361, 2010 WL 2292399, at *5 (D.N.M. May 25, 2010)(Browning, J.)(recognizing that a crime

under 18 U.S.C. § 113(a)(4) qualifies as a crime of violence). In addition, a crime committed under 18 U.S.C. § 113(a)(3) "qualifies as a crime of violence under § 3156(a)(4)(B) because it is a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." United States v. Scott, 2010 WL 2292399, at *5. Count 2 charges Atole with assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). The Tenth Circuit has expressly held that a crime committed under this statute is a crime of violence under 18 U.S.C. § 16, which provides a virtually identical definition of crime of violence as 18 U.S.C. § 3156(a)(4).[5] See United States v. Zunie, 444 F.3d 1230, 1235 n.2 (10th Cir. 2006)("Assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) is a crime of violence within the meaning of 18 U.S.C. § 16(a)."). Courts generally presume that Congress intends identical language in different statutory sections to have the same meaning. See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006).

Second, the weight of the evidence against Atole makes the second factor weigh in favor of detention. There are numerous eyewitnesses to the incident who state that they observed Atole either directly stab L. Trujillo or wrestling with L. Trujillo -- who then started bleeding profusely. L. Trujillo recalls the incident and states that Atole stabbed her. Additionally, after purportedly

---

[5]18 U.S.C. § 16 provides:

The term 'crime of violence' means--

    (a)    an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (b)    any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

waiving her rights under Miranda v. Arizona, Atole confessed to the crime.  This amount of evidence is significant, and will be difficult for Atole to defend against the charged crimes.  Thus, this factor weighs in favor of detention.

Third, the factor regarding Atole's history and characteristics weighs somewhat in favor of release.  Atole has lived in New Mexico for a long period of time and has lived at her current residence since 1998.  She has been unemployed since 2007, however.  The USPO has indicated that she has very few financial resources.  She has significant ties to the community given her large amount of family in the area.  While she has some criminal charges in her past, none of these offenses appear to be particularly violent in nature.  The United States could not offer many details regarding these prior criminal charges for the Court to draw much of a conclusion about their seriousness.  Atole may have some history of drug or alcohol abuse, and she was intoxicated when she committed the offense, but the United States has offered little other evidence regarding her substance abuse problems.  Atole does not appear to have engaged in much criminal behavior in the past.  At the time the United States brought the current charges, she was not on probation, parole, or release pending trial for any criminal charges.

Fourth, the factor regarding the nature and seriousness of the danger to any person or the community posed by Atole's release counsels in favor of detention unless the Court can, with conditions or a combination of conditions, reduce her danger to the victim and to others to an acceptable level. Given Atole's violent behavior, there appears to be some risk to the alleged victim if the Court releases Atole.  Additionally, the Court is concerned that there are allegations that Atole attacked more people than just the alleged victim.  Those facts suggest that she would pose a danger to others in the community beyond the alleged victim, particularly given that a knife is a particularly dangerous weapon.  It is worth noting that the alleged victim may no longer live in the area where

Atole's mother lives, but Atole presented no evidence at the hearing to this effect, only statements from her lawyer. "Counsel's arguments are not evidence" upon which a Court can base its findings. Luevano v. Holder, 660 F.3d 1207, 1213 (10th Cir. 2011). Thus, the Court cannot conclude based on those arguments alone that the victim no longer resides in the area. The Court does not have before it, however, any evidence suggesting Atole has a history of engaging in violent behavior beyond the incident in question.

Thus, with only one of the factors under 18 U.S.C. § 3142(g) weighing against detention, one favor weighing heavily in favor of detention, and another factor weighing in favor of detention, the Court concludes that there are some significant concerns about releasing Atole. The United States has proved by clear-and-convincing evidence that she is a danger to the community and to the alleged victim. The ultimate question when applying these factors, however, is whether "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Court believes that, with the appropriate conditions of release in place to mitigate Atole's danger to the public to acceptable levels, these factors weigh in favor of releasing Atole. The USPO has concluded, and the Court agrees, that placing Atole in a halfway house with a variety of other conditions of release will mitigate Atole's danger to the public to acceptable levels. Atole has agreed to the USPO's recommendations and has not asked the Court to release her to live back at her mother's home. Atole lacks any significant history of violent behavior beyond this incident. The trigger point appears to have been a mix of alcohol and jealousy, because Atole observed another woman flirting with her boyfriend. Isolating Atole from such an environment, placing her in a halfway house, and preventing her from drinking alcohol or taking controlled substances should avoid the risk of any similar incident. Also, if the Court adds lockdown conditions at the halfway

house, as well as GPS tracking, the Court believes that it will reduce the danger posed to the alleged victim and to the community to acceptable levels.

The Court will adopt the USPO's recommended conditions regarding Atole's release with some modifications. Atole will be released to the third party custody of Diersen Charities, Inc. on a $5,000.00 unsecured bond and must comply with the following conditions:

1. Remain confined in the Diersen Charities, Inc. compound.

2. Consent to the placement of a global positioning device on her person to ensure that she does not leave the Diersen Charities, Inc. compound.

3. Participate in an evaluation to assess the presence, nature and severity of any substance abuse problem if Atole can do so on the Diersen Charities, Inc. compound. Otherwise, Atole has no obligation to comply with this condition.

4. Participate in drug treatment/counseling if Atole can do so on the Diersen Charities, Inc. compound. Otherwise, Atole has no obligation to comply with this condition.

5. Refrain from use of unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

6. Do not drink alcohol.

7. Submit to substance abuse testing.

8. Refrain from obstructing, attempting to obstruct, or tampering, in any fashion, with the efficiency and accuracy of any prohibited substance testing which is required as a condition of release.

9. Participate in a program or course of study aimed at improving educational level or employment skills, for example, a GED program, a vocational training program, or

        a literacy program, if Atole can do so on the Diersen Charities, Inc. compound. Otherwise, Atole has no obligation to comply with this condition.

10. Remain in the custody of a designated person who has agreed to assume supervision and report any violation of a release to the Court.

11. Report to pretrial services as directed.

12. Reside in a community facility full-time.

13. Report as soon as possible, to the supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

14. Comply with prohibitions on possessing firearms or other weapons.

15. Have no contact with the victim in the alleged offense.

The Court will allow Atole to make a request with the Court to loosen some of these restrictions, such as the restriction confining her to the Diersen Charities, Inc. compound, once she has demonstrated that she can comply with the conditions. The Court will therefore deny the United States' request that it detain Atole.

    In sum, without access to a vehicle and with GPS device monitoring her movement, it is unlikely she will be a flight risk or pose a risk to the alleged victim or the community. Without a car, it is unlikely she will return to Mescalero or go try to find L. Trujillo in Navajo. While Atole is in lockdown at Diersen and does not have access to alcohol, she is unlikely to be a danger to L. Trujillo or others. The Court believes it has, with these conditions, reduced the risk of nonappearance, and the risk of danger to L. Trujillo or to others, to an acceptable level.

    **IT IS ORDERED** that the request for pre-trial release in the Defendant's Notice of Appeal of Detention Order, filed November 30, 2011 (Doc. 13), is granted. The Court will release the

Defendant Heather Atole on the conditions set forth herein, with any mandatory conditions also applicable.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Aaron O. Jordan
Sarah M. Davenport
  Assistant United States Attorneys
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Barbara A. Mandel
  Assistant Federal Public Defender
Federal Public Defender's Office
Las Cruces, New Mexico

    *Attorney for the Defendant*